UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-20025-CR-MARTINEZ/MCALILEY
CASE NO. 14-20854-CR-MARTINEZ/MCALILEY

UNITED STATES OF AMERICA,

        Plaintiff,

v.

CARL FIORENTINO and
GILBERT FIORENTINO,

        Defendants.

_____/

## REPORT AND RECOMMENDATION REGARDING RESTITUTION

Defendants in these two cases, brothers Carl and Gilbert Fiorentino, engaged in fraud during the course of their employment with Systemax, Inc., a publically traded company. Both Defendants held executive management positions, and used their positions to solicit cash, merchandise and services, from Systemax vendors and others, and to misappropriate Systemax property, without disclosing this to Systemax. Both pled guilty to fraud charges, in two separate cases assigned to the Honorable Jose E. Martinez, and earlier this year Judge Martinez sentenced both Defendants to terms of incarceration.

At sentencing, the government, on behalf of Systemax, asked the Court to order both Defendants to pay various categories of restitution to Systemax. Judge Martinez

1

addressed that issue in April 2015.[1]   During that restitution hearing, the government

sought five categories of restitution on behalf of Systemax:   (1) overcharges or kickbacks;

(2) product theft; (3) attorneys' fees and costs incurred by Systemax; (4) return of a portion

of the compensation Systemax paid Defendants; and (5) prejudgment interest.   [DE 95, p.

6].

At the conclusion of that hearing, Judge Martinez referred to me the issues of

whether to order restitution to Systemax (and if so, how much) for:   (1) attorneys' fees and

costs Systemax incurred as a result of Defendants' criminal conduct, and (2) a portion of

the compensation Systemax paid Defendants during the course of their criminal conduct.

Judge Martinez also referred to me the question of the proper calculation of prejudgment

interest.   Later, Judge Martinez clarified that his referral included the question whether the

Court should reduce the amounts of restitution by any amounts either Defendant had

previously paid Systemax.   [DE 92, 118].[2]

In May, I met with the parties and counsel for Systemax[3] and directed that they:

(1) exchange the information they rely upon for their respective positions, (2) meet and

_____

[1] A transcript of that hearing was filed in Case No. 14-20025, at DE 95.

[2]   These two cases are not consolidated.   Therefore, all matters related to restitution have been docketed in both cases.   For the sake of simplicity, unless otherwise noted, I cite only to the docket entry numbers for *Untied States v. Carl Fiorentino*, 14-20025.   For the same reason, I also refer to Defendants by their first names.

[3] As a victim of Defendants' crimes, Systemax has a right to be reasonably heard at these restitution proceedings.   18 U.S.C. § 3771(a)(4); Fed. R. Crim. P. 60 (a)(3).   Systemax filed a memorandum that set forth what it would like to receive in restitution [DE 66] and its counsel presented argument at the hearing I held.

confer in an effort to narrow their disputes, and (3) file legal memoranda in support of their positions.   [DE 101, *Order Regarding Referred Restitution Issues*].   Thereafter, the parties and Systemax reached agreement on two of the issues referred to me:   (1) the amount of Systemax's attorneys' fees and costs Defendants should pay as restitution and (2) the manner in which the Court should calculate prejudgment interest on the ultimate award of restitution.   [DE 53, 14-20854, *Notice of Status of Restitution Hearing*].[4]   The parties and Systemax filed legal memoranda that address the two remaining issues in dispute referred to me:   (1) whether Defendants should pay Systemax, as restitution, a portion of the compensation Systemax paid Defendants during their employment, and (2) whether the Court should reduce the restitution Gilbert owes by the $11,000,000 Gilbert paid Systemax pursuant to a settlement agreement.[5]   [DE 102, 103, 106, 107, 111; 14-20854 DE 54, 59, 60, 61, 65, 66].

## I.   Evidentiary hearing

On September 30, 2015, I held a restitution hearing at which I heard evidence and

---

4 I report the parties' agreements, *infra*, at Sections II.C and II.D.

[5] As part of the briefing on the restitution issues, Defendant Gilbert moves to strike the expert report of Catharine Goodwin, Esq., filed by Systemax, on the ground that victims do not have standing to present evidence in a restitution hearing.  [Case No. 14-20854, DE 76].   Systemax filed an opposition to the motion.   [*Id.*, at DE 80].   In her report, Ms. Goodwin offers her opinion that the money Gilbert paid Systemax pursuant to their 2011 settlement agreement, after Systemax learned of Gilbert's fraud, may not, as a matter of law, offset an award of restitution.   [*Id.*, at DE 66-1, *Report of Catharine Goodwin*].   Opinions as to ultimate legal conclusions are not an appropriate subject of expert evidence.   *See United States v. Delatorre*, 308 Fed.Appx. 380, 383 (11th Cir. 2009).   For this reason, I did not consider Ms. Goodwin's report and I therefore deny the motion to strike as moot.

argument about the two disputed issues.[6]   Only one witness testified at the hearing: Thomas Axmacher, Systemax's Vice-President and Corporate Comptroller.   [DE 123-1, p. 16].   Mr. Axmacher provided information about various categories of compensation Systemax paid Gilbert and Carl between 2003 and April 2011, the years when they engaged in criminal conduct.[7]   The government introduced into evidence two spreadsheets, one for each Defendant, prepared by Systemax's payroll department that set forth those categories of compensation and amounts, and Mr. Axmacher's testimony tracked those spreadsheets.   [*Id.* at p. 17-8].   I have attached the spreadsheets to this Report and Recommendation for ease of reference.

Mr. Axmacher explained that each category of compensation identifies amounts paid each Defendant in the stated year, although the Defendants may have accrued the right to receive those payments in an earlier year.   [*Id.* at pp. 35-6].

Looking first at the compensation paid Gilbert, Mr. Axmacher testified that the total for the years 2003 through April 2011 was $27,431,000.00.   [*Id.* at p. 18].   The first category of compensation on the chart, identified as "regular", refers to Gilbert's base pay. [*Id.* at p. 19].   The next category, "retro," was a retroactive payment in 2008 (in the

---

[6] In the legal memorandum they filed before the hearing, the parties and Systemax set forth a number of positions on the various issues, and then modified some of those positions at the later restitution hearing.   I do not attempt to track the full evolution of their arguments here, but rather address only their final positions.

[7]  Gilbert conspired, from January 2002 until April 18, 2011, to engage in securities and tax fraud. [Case No. 14-20854, DE 1, *Information*].   Carl's conspiracy to commit mail and wire fraud, and tax evasion, occurred between January 2003 and April 18, 2011.   [DE 57, *Second Superseding Information*].

amount of $1,696.16), for a salary increase due at the start of the year.   [*Id.* at p. 19-20].

The next two categories, "benefit reimbursement" and "group term life", concern health care and group life insurance premiums Systemax paid on Gilbert's behalf.   [*Id.* at p. 20].   Mr. Axmacher thought the category labeled "fringe" identified Gilbert's auto expenses that Systemax reimbursed.   [*Id.* at p. 20].

The category labeled "bonus" lists payments made between 2006 and 2011.   No amounts are shown in the years 2003, 2004 and 2005, and Mr. Axmacher thought, but could not confirm, that the bonuses Systemax paid Gilbert in those years were accounted for in Gilbert's "regular" compensation.   [*Id.* at p. 21].   For the years 2006 through 2011, however, the category of "bonus" includes incentive compensation payments, as well as some payments made as dividend reimbursements on Gilbert's restricted stock.   [*Id.* at p. 21].   Mr. Axmacher explained that Gilbert had stock agreements with Systemax that entitled him to receive a stated number of shares over a period of years.   When Systemax issued dividends on shares Gilbert had yet to receive, it would nevertheless pay Gilbert the dividends earned on those embargoed shares.   [*Id.* at pp. 30-1].

As for "other 1099 compensation," Systemax could not determine what that referenced.   [*Id.* at p. 21].   The last category, "Stock options/Restricted stock" sets forth Gilbert's taxable earnings each year as the result of stock options and restricted stock granted to Gilbert during his tenure with TigerDirect.[8]   [*Id.* at p. 21-2].   Because Mr.

---

[8] Gilbert founded TigerDirect in 1989, and sold it to Systemax in 1995 but continued to serve as TigerDirect's CEO throughout the conspiracy, until April 18, 2011.   [14-20854, DE 20, p. 19,

Axmacher could not identify each stock agreement that gave rise to each payment listed in this category, the Court cannot determine whether any of these payments are related to an agreement entered into prior to Systemax acquiring TigerDirect. [*Id.* at pp. 28, 48-9]. Mr. Axmacher did confirm, however, that in one of its SEC filings, Systemax identified a 2004 restricted stock grant to Gilbert, as a nonperformance-based grant. [*Id.* at p. 30]. That stock grant accounted for at least a portion of the compensation listed on the spreadsheet as bonus and stock option/restricted stock. [*Id.* at pp. 21, 30-1].

Turning to the spreadsheet that summarizes Carl's compensation, Mr. Axmacher confirmed that the categories are essentially the same as Gilbert's, with the exception of an additional category "commission," which concerns payments Systemax made to Carl, totaling $450,717.82, as royalties on a patent Carl owned and which Systemax used in one of its products. [*Id.* at p. 24].

Moreover, in Carl's case, the category "other 1099 compensation" was for compensation Systemax paid Carl each month for opening the building in the morning. Finally, Carl received only stock options; he did not have any restricted stock plans. Therefore, the "stock option/restricted stock" category contains only earnings resulting from the difference between the strike price of his options and the market value of the stock on the days Gilbert exercised the options, in other words, Carl's profits on the stock

---

*Presentence Investigation Report*]. During the course of his criminal conduct Carl was the president of TigerDirect, and employed by Systemax. [DE 78, p. 21, *Presentence Investigation Report*].

options.   [*Id.* at p. 25].   The government presented no testimony as to when Carl received these stock options.   According to the spreadsheet, Carl received $5,530,982.37 in total compensation from Systemax during the time he was defrauding Systemax.

Mr. Axmacher also testified that Systemax received a $5 million insurance payment in connection with the losses it suffered because of the Fiorentinos' fraudulent conduct. [*Id.* at p. 44].   The parties agreed that the effect of this payment was not at issue before me. [*Id.* at pp. 45, 85-7].

## II.   Analysis

The Mandatory Victim Restitution Act of 1996 (MVRA), 18 U.S.C. § 3663A, requires the Court to order a defendant, convicted of an offense against property that was committed by fraud or deceit, to pay restitution to the victim of the crime.   18 U.S.C. § 3663A(a)(1), (c)(1)(A)(ii).   There is no dispute that Defendants were convicted of such an offense, and that Systemax is a victim of those offenses, as defined by the MVPA.   The Court must decide only the amount of restitution Defendants must pay.

The Court can order Defendants to pay restitution only for the loss of property that was the direct and proximate result of Defendants' unlawful conduct, reduced by the value of any part of the property returned.   18 U.S.C. § 3663A(a)(2) and (b)(1)(B)(i).   To establish direct and proximate cause:

> [T]he government must show not only that a particular loss would not have occurred but for the conduct underlying the offense of conviction, but also that the causal connection between the conduct and the loss is not too attenuated (either factually or temporally).

*United States v. Robertson*, 493 F.3d 1322, 1334 (11th Cir. 2007). This means that restitution can compensate a victim for direct damages, but not consequential damages. *United States v. Coffin*, 2011 WL 4962395, *2 (E.D. N.Y. Oct. 18, 2011). [9]

To support a restitution award, the government must prove by a preponderance of the evidence a reasonable estimate of the amount of the victim's loss. *United States v. Baldwin*, 774 F.3d 711, 728 (11th Cir. 2014) ("Because the determination of the restitution amount is by nature an inexact science, where difficulties arise, a district court may accept a reasonable estimate of the loss based on the evidence presented.") (citations and quotation marks omitted). While the Court may rely on estimates, it "must base its restitution award on more than mere speculation about a victim's actual losses." *Coffin*, 2011 WL 4962395, at *2.

### A.   Compensation-based restitution

There is no dispute that Systemax compensated Gilbert and Carl on the understanding that they were providing Systemax their honest services, that both men did provide valuable and honest services to Systemax during the years in question, and that both also diverted some of their on-the-job time and energies to engage in fraud. The government argues that Defendants' restitution should include a sum that represents the honest services for which Systemax paid Defendants, but Defendants failed to deliver.

---

[9] *Coffin* is a consolidation of Case Numbers:   09-CR-481 (ARR), 09-CR-453 (ARR), 09-CR-761 (ARR), 09-CR-459 (ARR), 09-CR-452 (ARR), 09-CR-479 (ARR).

The government contends that a sum equal to 25 % of the total compensation Systemax paid Defendants (during the period of their criminal schemes) is the most reasonable estimate of the value of the loss of Defendants' honest services. Systemax argues that a 50 % claw back of Defendants' compensation more accurately represents that loss.

The notion that employers can receive as restitution the difference between the value of the services a defendant rendered a victim employer, and the value of the services an honest employee would have provided, has been accepted by a number of courts. *See United States v. Sapoznik*, 161 F.3d 1117, 1121-22 (7th Cir. 1998) (employer victim entitled to restitution for "the difference in the value of the services defendant rendered [victim] and the value of the services that an honest [employee] would have rendered"); *United States v. Skowron*, 839 F.Supp.2d 740, 751 (S.D.N.Y. 2012) (restitution to an employer of a portion of the compensation it paid defendant who committed fraud in connection with his employment "fits squarely within the statutory language" of the MVPA); *United States v. Bahel*, 662 F.3d 610, 649 (2nd Cir. 2011) (restitution of a portion of a defendant's salary is appropriate where "an employer pays for honest services but receives something less.").

Defendants do not dispute the general notion that the MVPA can allow a victim to receive as restitution that portion of a fraud defendant's compensation that represents the employer's loss of honest services. They argue, however, that as a matter of policy the Court should not order this type of restitution here, because the parties have not identified

9

any written decisions in corporate fraud cases in this district where a claw back of compensation was awarded as restitution.   [DE 123-1, pp. 89-90, 92-3, 101, 105]. Defendants also argue that if the Court finds this kind of restitution is appropriate, the percentage should be something less than 25 %.   They further argue that the Court should limit the award to a percentage of Defendant's base salary and standard benefits, the only compensation they believe the government showed to be tied to their performance, which is a far smaller number than the total compensation set forth on Systemax's spreadsheets. [DE 123-1, p. 113].

### i.       Systemax is entitled to compensation for the loss of Defendants' honest services

As an initial matter, I reject the argument that public policy prevents this Court from ordering Defendants to pay restitution to Systemax for its loss of Defendants' honest services.   There is no doubt that Defendants used their positions at Systemax to engage in criminal conduct and in so doing, failed to provide the wholly honest services Systemax paid them to deliver.   I decline to speculate why the government may not have sought restitution for the loss of honest services in other criminal corporate fraud cases in this district, or why courts may have declined to order it.   The absence of written precedent in this district does not preclude such an award, particularly where courts in other districts have found awards of this kind appropriate.

Moreover, the fact that it is impossible to quantify precisely how much of Defendants' efforts were devoted to their criminal scheme, does not mean that Systemax

10

should receive no compensation in restitution for the loss of Defendants' honest services. As already noted, the government's burden is to prove by a preponderance of the evidence a reasonable estimate of the amount of the victim's loss. *Baldwin*, 774 F.3d at 728. Other courts have confronted the difficulty of valuing the loss of honest services and have accepted reasoned approximations of that loss, and I believe this Court can do the same. *See Sapoznik*, 161 F.3d at 1121-2 (recognizing the difficulty of estimating the loss caused by a defendant's failure to provide honest services, yet upholding restitution award equal to one year of defendant's salary); *Skowron*, 839 F.Supp.2d at 752 ("a court may order restitution approximating the value of the deprived honest services where, as here, attempting to calculate the employer's precise loss would force the court into unduly burdensome calculations"); *Bahel*, 662 F.3d at 650 (approving the district court's estimate of the amount of restitution for loss of honest service because it would be "unduly complex" to determine the exact amount); *Coffin*, 2011 WL 4962395, at *2-4 (recognizing the inherent difficulty in calculating the amount of compensation lost due to defendant's failure to provide honest services).

ii. **The restitution amount should be a percentage of Defendants' total compensation from Systemax**

A threshold question is what amount of compensation did Systemax pay Defendants for their honest services.   The government argues that with one exception [10] all

---

[10] At the hearing, the government agreed to the obvious:   the patent royalties Systemax paid Carl for the use of his patent was not compensation for Carl's honest services.   [DE 123-1, p. 52-3].   I therefore subtract $450,717.82 from the government's calculation of Carl's total compensation.

compensation Systemax paid Defendants was premised on the expectation that Defendants would provide wholly honest services.

Defendants argue that the government has shown only that their regular salary and benefits were paid directly for their performance in the years earned. *See* [DE 123-1, pp. 93-107]. Defendants assert that all other forms of compensation may have been paid for any number of other reasons.[11] Defendants thus contend that any compensation to Systemax for loss of Defendants' honest services must be calculated using only their base pay and benefits. *[Id.]*.

Defendants are correct that the government did not show that Systemax directly linked all compensation to Defendants' performance. As an example, Defendants received a portion of their compensation through stock option or restricted stock agreements. The stock option agreements provided Defendants with the opportunity to purchase Systemax stock at a predetermined price over time. The restricted stock agreements granted Gilbert a stated amount of stock over a period of years. There is no evidence that Systemax expressly tied these forms of compensation to Defendants' performance.

I find, nonetheless, that the government established, by a preponderance of the evidence, that Systemax paid all compensation on the understanding that Defendants

---

11 For example, given their longevity with Systemax and their executive positions with the company, Defendants may have earned some compensation in the years before their criminal conduct, but had payment delayed; in addition Systemax may have paid some compensation simply as an incentive for Defendants continued employment, without tying that compensation to their performance.

would provide wholly honest services to the company.[12]   Notably, other courts have reached the same conclusion in somewhat comparable circumstances.   *See Sapoznik*, 161 F.3d at 1121 ("We may assume that [the employer] would not have hired [the defendant] had it known of his intentions. . . . "); *Bahel*, 662 F.3d at 649 (quoting *Sapoznik* with approval); *Coffin*, 2011 WL 4962395, * 2 (ordering restitution of a percentage of defendant's total compensation and benefits where defendant "is a former employee who was compensated under the false pretense that he was rendering honest and faithful service to his employer. . . .").

In sum, I recommend that the Court, in computing restitution for the loss of Defendants' honest services, order Defendants to pay a percentage of the total compensation Systemax paid each Defendant during the relevant period.   Gilbert's total compensation from Systemax was $27,431,000.00; Carl's total compensation was $5,080,264.55.[13]

### iii.   A reasonable estimate of Systemax's loss is 20% of the total compensation it paid Defendants

Most courts faced with determining the percentage of honest services denied an organization due to a defendant's on-the-job fraud, have ordered restitution in amount equal to between 10 and 25 % of a defendant's compensation.   As noted, they have done so acknowledging the impossibility of valuing this loss with certainty.   *See e.g., Skowron*,

---

12   In this regard, it is worth noting that Systemax terminated the Defendants, stopping all compensation, when it learned of their illegal conduct.

13   $5,530,982.37 less $450,717.82 (for commissions) equals $5,080,264.55.

839 F.Supp.2d at 750 (citing *Bahel*, 662 F.3d at 649-50, citing *Sapoznik*, 161 F.3d at 1121); *Coffin*, 2011 WL 4962395, * 2.

The *Coffin* Court considered five factors when it sought to value the loss of that defendant's honest services to his victim/employer:   (i) the amount of bribes the defendant received; (ii) the amount of the intended or actual loss; (iii) the length of time the schemes lasted; (iv) defendant's level of seniority at the victim company; and (v) defendant's level of participation in the schemes relative to the other defendants.   *Coffin*, 2011 WL 4962395, * 4.[14]   In other words, faced with the impossibility of precisely valuing the honest services the defendant failed to provide his employer, the *Coffin* looked at the circumstances of the defendant's employment and criminal conduct, to arrive at the percentage of the defendant's compensation that to be paid in restitution.   I consider those factors, as they provide a useful and flexible framework for a difficult decision.

### a.    Gilbert

Some of the *Coffin* factors favor a higher measure of the honest services Gilbert failed to provide Systemax.   Regarding the first factor, Gilbert received approximately $1 million in kickbacks and bribes over the course of the scheme.   [DE 95, p. 32].   At sentencing, the Court found that the loss amount, the second factor, was in the range of $ 27 million.   [*Id.* at pp. 29-30].   Third, Gilbert engaged in the fraudulent conduct over many

---

[14] Systemax argues that the Defendants' conduct was more egregious than the conduct in *Coffin* and that restitution in an amount equal to 50% of their compensation is warranted.   [DE 123-1, pp. 63-70].   Essentially, Systemax asks this Court to find that the Defendants devoted half of every working day for eight years to their criminal schemes.   I do not believe this record supports such a finding.

years.  [14-20854, DE 1].  As for the fourth factor, Gilbert held a position of authority with Systemax.  He was the CEO of TigerDirect, a member of Systemax's Board of Directors, and Carl's supervisor.  [DE 123-1, p. 65; 14-20854, DE 28, p. 19, *Presentence Investigation Report*].  As for the last factor, Gilbert acknowledged as part of his plea agreement that he was a main participant in the fraudulent scheme.  [14-20854, DE 17, pp. 11-2].  These factors generally weigh in favor of the return of a higher percentage of Gilbert's compensation.

Two other factors weigh in favor of a more moderate award.  First, a significant portion of Gilbert's compensation was not tied expressly to his job performance, and I believe it is reasonable, and most practical, to account for this by lowering the percentage used to determine the value of the lost honest services.   Second, the government provided no evidence that Gilbert failed to carry out his legitimate duties at Systemax.

Having weighed the various considerations presented by the parties and Systemax, I conclude that 20% of the total compensation Systemax paid Gilbert during the years he participated in the fraud reasonably represents Systemax's loss of Gilbert's honest services directly and proximately caused by Gilbert's criminal conduct.   That amount is $5,486,200.00, and I recommend that the Court order Gilbert to pay that to Systemax as restitution.[15]

### b.    Carl

The *Coffin* factors that address the duration of the scheme and the loss amount are

---

[15]   $27,431,000 x 20 % = $5,486,200.00.

essentially the same for Carl as for Gilbert.  [DE 95, p. 29; DE 57, *Second Superseding Information*].  As for the first factor, Carl received approximately $10,000,000 in bribes and kickbacks, significantly more than Gilbert.  [DE 78, pp. 7-14, ¶¶ 54, 55].  Carl was also a leader in the fraud, but his position as President of TigerDirect and CompUSA was subordinate to Gilbert.  [DE 123-1, p. 57].

In the end, I believe the analysis for Carl is essentially the same as for Gilbert.  That is, while some of the *Coffin* factors weigh in favor of a substantial award, the government did not establish that all compensation Systemax paid Carl was directly tied to his job performance, or that his job performance was deficient.  On balance, I believe this record supports the finding that 20% of Carl's total compensation reflects the direct and proximate loss of his honest services to Systemax.  I recommend that the Court order Carl to pay Systemax $1,016,052.91, as restitution for the loss of his honest services. [16]

### B.    Effect of Gilbert's settlement with Systemax

On April 18, 2011, Systemax announced the conclusion of its internal investigation, finding that Gilbert had wrongfully taken merchandise from the company, used corporate resources for his personal benefit, including misappropriating millions of dollars of American Express points, and engaged in a kickback arrangements and other corporate self-dealing.  A few weeks later, on May 6, 2011, Gilbert resigned from Systemax and

---

[16] $5,530,982.37 less $450,717.82 (for commissions) equals $5,080,264.55.  Twenty percent of this amount is $1,016,052.91.

entered into a settlement agreement with it in which he agreed to pay, and did pay, Systemax $11,000,000 in cash and assets.   [DE 95, p. 19-20].

The government and Gilbert agree that the Court, in determining a restitution amount, must account for Gilbert's settlement payment, but they disagree how this should be done.   On this point Gilbert makes two arguments.   He argues first that the settlement completely bars any restitution award.   He then argues, in the alternative, that he is entitled to a reduction of the total restitution award by the full amount of the settlement. The government argues that, in the event the Court finds Gilbert's total compensation is limited to his regular salary and benefits (something I do not recommend), the $11,000,000.00 settlement amount should set off against only that portion of the restitution award that compensates Systemax for the loss of Gilbert's honest services.   If the Court does not so limit Gilbert's compensation, then the government agrees the settlement should offset the entire amount of restitution.   [DE 123-1, pp. 117-8].   Systemax asks the Court to consider yet another view:   that the settlement is irrelevant to the calculation of restitution and does not reduce the restitution Gilbert must pay.

Working through these arguments, I first reject out of hand Gilbert's argument that, as a matter of fairness, the civil settlement must foreclose the entry of a restitution judgment against him.   As he puts it, "by any rational standard, Gilbert Fiorentino has already paid his restitution."   [DE 95, p. 26].   Gilbert himself acknowledges, however, that the settlement agreement does not deprive the court of jurisdiction to enter a restitution award.   [*Id.* at p. 24].   *See, e.g., United States v. Edwards*, 595 F.3d 1004, 1011-3 (9th

Cir. 2010); *United States v. Bearden*, 274 F.3d 1031, 1040-1 (6th Cir. 2001) (a release in a civil settlement does not prevent a sentencing court from ordering restitution).

Thus, what the Court must decide is how Gilbert's settlement payment should be accounted for in the restitution calculation.  In doing this, I am guided by the Eleventh Circuit's admonition that "[r]estitution is not intended to provide a windfall for crime victims but rather to ensure that victims, to the greatest extent possible, are made whole for their losses."  *United States v. Bane,* 720 F.3d 818, 827 (11th Cir. 2013).

Before it can resolve this question, the Court must decide which statutory provision is applicable here.  The parties assume that 18 U.S.C. § 3664(j)(2) applies.  Section 3664(j)(2) states:

> (2) Any amount paid to a victim under an order of restitution shall be reduced by any amount later recovered as compensatory damages for the same loss by the victim in (A) any Federal civil proceeding; and (B) any State civil proceeding, to the extent provided by the law of the State.

By its plain language, § 3664(j)(2) addresses the treatment of the recovery of compensatory damages in a civil action, after the entry of a restitution awards.  Here, Gilbert's payment to Systemax was not made as part of civil action, and occurred before restitution was ordered.   This provision plainly does not apply to the circumstances before the Court.

A different provision of the MVRA, on the other hand, directly addresses the effect of the return of property by a defendant to a victim on the calculation of a restitution award.  Specifically, 18 U.S.C. § 3663A(a)(3)(b) provides that a restitution award for the loss of

property shall consist of an amount equal to the value of the property lost, <u>less</u> the value of any part of the property returned.   The first part of that equation (an amount equal to the value of the property lost) will be the total of the various categories of restitution this Court will order.[17]   The second part of the § 3663A(a)(3)(b) equation is the property Gilbert returned to Systemax pursuant to the settlement agreement, years before he was charged.

Systemax disputes, as a factual matter, that Gilbert's settlement payment constituted a return of the property as contemplated in § 3662A(a)(3)(b).   It contends that the settlement agreement does not explicitly acknowledge that Gilbert's payment was a return of property and it notes that the agreement does not reference the criminal prosecution (that had not begun when the agreement was made).   Systemax suggests Gilbert's payment was compensation for some other unspecified purpose, unrelated to the crime of conviction. [DE 123-1, p. 81].   After careful review, I find that Systemax' characterization of the purpose behind Gilbert's payment upon settlement is unsupported by the record and case law.

As for the law, the cases cited by Systemax in support of this position are inapposite:   *United States v. Joseph*, 743 F.3d 1350, 1354 (11th Cir. 2014), concerns the effect of forfeited property on a defendant's restitution obligation; *United States v. Edwards*, 595 F.3d at 1011-2 addresses the collateral estoppel effect of a bankruptcy

---

[17] To review, this includes the various categories of restitution addressed before Judge Martinez at the April 29, 2015 restitution hearing he held, and which he has taken under advisement (*i.e.* overcharges and kickbacks, and product theft), plus the categories of restitution addressed in this Report and Recommendation (*i.e.*, a partial return of compensation, attorneys' fees and costs and prejudgment interest).

settlement agreement on the Court's ability to order restitution; *United States v. Crawford*, 169 F.3d 590, 593 (9th Cir. 1999), discusses the effect, under the earlier Victim Witness Protection Act (VWPA), of an payment to the victim from the defendant's insurance. Finally, although the court in *United States v. Savoie*, 985 F.2d 612, 619 (1st Cir. 1993), rejected defendant's argument that his civil settlement precluded restitution, and further found that he was not entitled to set off, that decision was made under the provisions of a different statute, the now defunct VWPA.[18]

Further, both the record and simple common sense do not align with Systemax' after-the-fact characterization of the nature of the settlement agreement. It does not appear that the settlement agreement, finalized within weeks of Systemax's discovery of Gilbert's criminal activities, and upon Gilbert's resignation from the company, was wholly unrelated to Gilbert's fraud as Systemax now suggests. At the restitution hearing before Judge Martinez, Gilbert described the circumstances that let up to that agreement, in particular that it arose in connection with the company's discovery of his unlawful conduct, and he asserted that the settlement amount far exceeded the company's suspected losses and included a significant repayment of compensation. [DE 95, pp. 21-2]. Systemax's counsel spoke at that hearing but did not dispute this characterization of the circumstances surrounding its entry into the settlement agreement with Gilbert.

---

[18] Moreover, the reasoning in *Savoie* has been criticized in recent years as resulting in double recovery to the victim. *See United States v. Bogart*, 490 F.Supp.2d 885, 901 (S.D. Ohio 2007).

Systemax argues that the settlement agreement, in part, was intended to reimburse it for millions of dollars of misappropriated American Express points, which it contends was totally unrelated to the charged criminal conduct. [DE 123-1, pp. 75-6]. In fact, Gilbert's misappropriation of American Express points is explicitly charged in the Information as an example of the manner in which he conspired to defraud Systemax. [DE 1, p. 6, ¶ 17].

On this record, I find that the $11,000,000 Gilbert has already paid Systemax constitutes "the value of . . . any part of the property returned" under § 3663A(a)(3)(b)(1)(B)(ii), and therefore must be credited in the calculation of restitution.

Thus, consistent with § 3663A(a)(3)(b)(1)(B), when the Court calculates Gilbert's restitution, I recommend that it subtract $11,000,000 from the sum that represents the value of all the property Gilbert caused Systemax to lose (including prejudgment interest), and in this manner arrive at the final amount Gilbert must pay in restitution.

## C.    Attorneys' fees and costs

The MVRA requires the Court to order restitution to the victim of "expenses incurred during the participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense." 18 U.S.C. § 3663A(b)(4). Attorneys' fees incurred by the victim are recoverable pursuant to this provision. *Bahel*, 662 F.3d at 647. In its sentencing memorandum the government reports that the parties reviewed redacted invoices for attorneys' fees and costs Systemax provided them, and the parties and Systemax agreed that Defendants should be jointly and severally liable for a restitution

award for those fees and costs in the amount of $3,060,800.00. [DE 107, p. 3]. Having carefully reviewed the record, I find that this agreement constitutes a reasonable estimate of those expenses and recommend that the Court include in its restitution award the agreed upon amount.

### D.     Prejudgment interest

Prejudgment interest may be awarded under the MVRA to compensate victims for the full amount of their losses. *United States v. Qurashi*, 634 F.3d 699, 704 (2nd Cir. 2011). The parties and Systemax have agreed on a method to calculate the prejudgment interest on the final restitution amounts. Specifically, they agree that interest should be calculated by totaling the losses for each calendar year (of all subcategories of restitution), and beginning the accrual of interest for each calendar year's total on January 1 of the following year, using the interest rate equal to the first weekly average one-year constant maturity Treasury yield for that year, as published by the Board of Governors of the Federal Reserve System. The interest rate for each year's amount will remain constant through April 29, 2015 (the date of the judgements), and interest will compound annually. Prejudgment interest will be joint and several on the amounts of restitution that are joint and several. [DE 107, pp. 3-4].

## III.   ORDER

For the reasons stated above, Defendant Gilbert Fiorentino's Motion to Strike Systemax's Expert Report, [Case No. 14-20854, DE 76], is **DENIED AS MOOT**.

## IV.    RECOMMENDATION

For the foregoing reasons I respectfully recommend that:

1.    The Court include in its restitution judgment:   (a) **$5,486,200.00** in restitution for the loss of Gilbert Fiorentino's honest services; (b) **$1,016,052.91** in restitution for the loss of Carl Fiorentino's honest services; (c) **$3,060,800.00** in restitution for the victim's attorneys' fees and costs, to be assessed jointly and severally against Gilbert Fiorentino and Carl Fiorentino.

2.    After the Court has determined the amount of restitution chargeable against each Defendant, it should find that the victim is entitled to prejudgment interest on those amounts as calculated using the method agreed to by the parties.

3.    Once the Court calculates the final restitution amount, including prejudgment interest, for Gilbert Fiorentino, the Court should subtract from that amount the $11 million previously paid by Gilbert Fiorentino to the victim in order to reach the final restitution award against Gilbert Fiorentino.

## V.    Objections

The parties may file written objections to this Report and Recommendation with the Honorable Jose E. Martinez within fourteen days of the date of this Order.  Failure to timely file objections shall bar the parties from attacking on appeal any factual findings contained herein.  *RTC v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745, 749-50 (11th Cir. 1988).

RESPECTFULLY RECOMMENDED in chambers at Miami, Florida this 13th day of January, 2016.

CHRIS MCALILEY
UNITED STATES MAGISTRATE JUDGE

Copies to:
The Honorable Jose E. Martinez
Counsel of Record

**Gilbert Florentino**

| | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | Jan-Apr 2011 |
|---|---|---|---|---|---|---|---|---|---|
| Regular | $ 656,416.12 | $ 565,761.68 | $ 696,807.81 | $ 435,346.12 | $ 456,484.04 | $ 450,478.32 | $ 480,551.97 | $ 487,000.02 | $ 170,500.01 |
| Retro | | | | | | $ 1,696.16 | | | |
| Benefit Reimbursement | | | $ - | $ - | $ - | $ - | | | |
| Group Term Life | | | $ 581.84 | $ - | $ 13,825.00 | $ 14,378.00 | $ 14,378.00 | $ 14,753.00 | $ 6,288.00 |
| Fringe | $ 540.00 | | | | | | | | |
| Bonus | $ 3,750.00 | | | $ 500,000.00 | $ 2,680.00 | $ 2,338,600.00 | $ 2,775,000.00 | $ 1,170,000.00 | $ 835,000.00 |
| Vacation | | | | $ 18,576.53 | | | | | |
| Other (1099) Compensation | | $ 2,200.00 | | $ 730,000.00 | $ 950,000.00 | | $ 1,452,800.00 | $ 2,190,000.00 | |
| Stock Options/Restricted Stock | | | | | $ 5,363,000.00 | $ 4,460,778.70 | | | $ (1,600.00) |
| Total Payroll Compensation | $ 660,696.12 | $ 571,961.68 | $ 697,389.65 | $ 1,683,923.14 | $ 6,772,364.04 | $ 7,464,778.18 | $ 4,722,729.97 | $ 3,861,753.02 | $ 994,188.01 |
| | | | | | | | | | Note A |

Note A: Gilbert's $1,350,000.00 restricted stock was reversed in May.

Case 1:14-cr-20025-JEM   Document 90-1   Entered on FLSD Docket 04/22/2015   Page 255 of

| Carl Florentino | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | Jan-Apr 2011 |
|---|---|---|---|---|---|---|---|---|---|
| Regular | $ 349,973.78 | $ 388,565.04 | $ 423,170.34 | $ 355,000.10 | $ 370,484.10 | $ 355,553.10 | $ 364,307.64 | $ 373,615.44 | $ 132,403.86 |
| Retro | | | | | | | $ 1,396.13 | $ 1,038.46 | $ 865.38 |
| Benefit Reimbursement | | | | | | $ 13,825.00 | $ 14,378.00 | $ 14,753.00 | $ 7,575.00 |
| Commission | | | | $ 61,297.41 | $ 146,498.72 | $ 104,660.12 | $ 61,285.44 | $ 71,004.40 | $ 5,971.74 |
| Group Term Life | $ 810.00 | | $ 573.86 | | | | | | |
| Fringe | $ 2,931.75 | $ 2,931.75 | | $ 2,279.72 | $ 2,310.00 | | | | $ (1,400.00) |
| Bonus | | | | $ 210,000.00 | $ 208,656.00 | $ 191,145.00 | $ 504,881.00 | $ 185,000.00 | $ 200,000.00 |
| Vacation | $ 564.98 | $ 586.71 | $ 564.98 | $ 564.98 | $ 564.98 | $ 564.98 | $ 564.98 | $ 564.98 | |
| Other (1099) Compensation | | | | | | | $ 56,900.00 | $ 321,150.00 | |
| Stock Options/Restricted Stock | | | | | | | | | $ 20,649.52 |
| Total Payroll Compensation | $ 354,280.51 | $ 392,083.50 | $ 424,309.18 | $ 629,142.21 | $ 728,513.80 | $ 665,748.20 | $ 1,003,713.19 | $ 967,126.28 | $ 366,065.50 |